Allen *v*. Carty et al.

------

GEORGE A. ALLEN *v*. JOHN CARTY, JAMES CARTY, PATRICK CARTY AND THOMAS CARTY.

The liability of the receiptor of property attached, upon his receipt, depends upon the liability of the officer who took the receipt. If the execution is delivered to another officer, and the property is demanded of the attaching officer in season to charge him, it is not necessary that it should also be demanded of the receiptor within the thirty days.

Where the term of court, at which a party recovers final judgment, ends on Saturday, Monday is the first day on which the party is entitled to take out execution ; and that day is to be *excluded* in the computation of the thirty days, within which property, attached on the original writ, must be demanded of the attaching officer by the officer holding the execution, in order to charge the property.

In an action upon a receipt for property attached, a deputy sheriff, to whom the execution was delivered, is a competent witness to testify that he made a seasonable demand of the property of the officer who made the attachment.

When a portion of the property attached and receipted has been withdrawn from the custody of the receiptor in such manner as to discharge his liabil-

9

Allen *v.* Carty et al.

ity so far, and the value of all the property receipted is expressed in the receipt at one entire sum, the damages, in an action upon the receipt, are to be determined by assuming the value of the whole property receipted to be the sum specified in the receipt, and then ascertaining the just proportion, at that assumed value, which the property retained by the receiptor would bear to the property for which he is not liable.

Assumpsit upon a receipt, executed by the defendants, for property attached by the plaintiff, as sheriff, on *mesne process.* The value of all the property specified as attached was stated in the receipt to be five hundred dollars. Plea, the general issue, and trial by jury, March T. 1845,—Bennett, J., presiding.

On trial the plaintiff gave in evidence the receipt declared upon, and then offered one Ferris as a witness. It appeared, that at the time final judgment was rendered in the suit in which the attachment was made, the plaintiff had ceased to be sheriff, and Ferris was a deputy under one Gleason, who was then sheriff, and that the execution was delivered to Ferris, as deputy sheriff; and it was offered to be proved by him, that he demanded the property of the plaintiff in due season to charge it in execution. The defendants objected to the competency of the witness; but the objection was overruled by the court, and the witness was allowed to testify.

It appeared, from all the evidence in the case, that final judgment, in the suit in which the property was attached, was rendered by the supreme court at their January Term, 1844, in Chittenden county; that the court adjourned, at that term, on the sixth day of January, 1844, which was on Saturday, and no special order was made as to the time of issuing this or any other execution of that term; that the execution issued of the date of January 8, 1844, and was placed in Ferris' hands on the sixth day of February, 1844; that on the seventh day of February, 1844, Ferris demanded the property of the plaintiff, who did not deliver it, but said he had this receipt; and on the ninth day of February, 1844, the plaintiff and Ferris demanded the property of the defendants. The county court decided, that the execution was issued and the property demanded in season, and that, on these facts, the plaintiff was entitled to recover.

The defendants then proved, that a portion of the property attached, and receipted by them, was actually the property of the plaintiff in the suit in which the attachment was made, and that it

Allen v. Carty et al.

was subsequently attached by his creditors, while in the hands of the defendants, and sold to pay his debts, and then offered to prove the *actual value* of the residue of the property remaining in their hands, —claiming that to be all that the plaintiff was entitled to recover in this suit. But the court decided, that the rule of damages would be the amount which was fixed in the receipt as the value of the whole property, deducting the actual value of that portion of the property which belonged to the plaintiff in the attachment, provided so much should be required to pay the debt, and excluded the evidence.

Verdict for plaintiff. Exceptions by defendants.

*C. D. Kasson* and *A. Peck* for defendants.

1. We claim, that, when property attached is receipted, and the execution is delivered to some other than the attaching officer, the demand should not only be made of the attaching officer, but of the receiptors also, within the thirty days. When the execution is delivered to the officer who made the attachment, a demand of the receiptors, made within the life of the execution, is sufficient; for in such case the privity of contract between the receiptors and officer is sufficient to advertise them of their liability, so long as he remains in office. But when he goes out of office and cannot have the process to take the goods, it seems to be going very far, to require the receiptors to take notice of the doings of other officers, between whom and themselves there is no privity.

2. But we insist, that no demand was made upon Allen within the thirty days, according to any legal mode of computation. It was the plain intention of the statute to bound a period of time, *within* which the property must be taken in execution. The term *"thirty days"* is intended to represent one aggregate period; hence there is as much propriety in counting *Sunday*, as any other day. By comparing sections nineteen and twenty of chap. 28 of the Revised Statutes with section forty one of the same chapter, it is manifest that this was the intention of the law: Again, it is well settled, that, when time is to be computed from an act done, or an event to happen, the day upon which the act is done, or event happens, is to be computed as the first day. *Rex* v. *Adderley*, 2 Doug. 464. *Castle* v. *Burditt*, 3 T. R. 623. *Glassington* v. *Rawlins*, 3 East 407, *Clayton's Case*, 5 Rep. 1, *Osbourn* v. *Rider*, Cro. Jac. 135, *Bel*

*lasis* v. *Hester*, 1 Ld. Raym. 280. Co. Lit. 225, lib. 3, §§ 422, 423, and note. *Presbrey et al.* v. *Williams*, 15 Mass. 193. *Portland Bank* v. *Maine Bank*, 11 Mass, 205. *Paine* v. *Webster*, 1 Vt. 135. If, therefore, in this case, the Sundays are to be computed, or if, treating *Monday*, the eighth day of January, as the first day upon which execution might issue, we are at liberty to commence the reckoning on that day, the thirty days expired on the sixth of February.

3. The witness, Ferris, was incompetent from his interest in the particular question. The question was, whether *he* had seasonably demanded the property of the plaintiff. It involved his own conduct, for which he was officially liable. *Dennison* v. *Hibbard*, 5 Vt. 496. *Yeuren* v. *Smalley*, 3 Vt. 251.

4. The rule of damages was erroneous. If property is placed in the hands of receiptors, on the faith of which *entire* property they assume a given amount of liability, we insist that it is equivalent to a warranty of title on the part of the sheriff, or his principal ; and the receiptors are not liable beyond the actual amount which they could hold.

*D. A. Smalley* and *E. J. Phelps* for plaintiff.

1. Ferris was a competent witness for the plaintiff. There is nothing to take the case out of the general rule, that a mere agent, or servant, may be a witness for his principal. *Eastman* v. *Hodges*, 1 D. Ch. 101. *Wainwright et al.* v. *Straw et al.*, 15 Vt. 215.

2. The demand upon Allen and the defendants was made in season to charge them. The case shows a demand upon the defendants within the life of the execution; and it is settled that such a demand is sufficient, provided the execution has been issued and a demand made upon the officer within thirty days after judgment. *Bliss* v. *Stevens*, 4 Vt. 88. The court adjourned the sixth of January, which was Saturday; Monday, the eighth of January, was consequently the first day, upon which the plaintiff could have an execution. Rev. St. c. 28, §§ 19, 20. Of course thirty days from the eighth of January were allowed to make the demand; and all the authorities tend to establish the principle, that when an act is to be done within a given number of days *from* a day mentioned, the time is computed exclusive of the day mentioned. 2 Cowp. 714. 3 N. H. 93. 4 N. H.

267. 10 N. H. 182. 15 Mass. 193. 1 Pick. 485. 12 M. & W. 2.

3. The rule of damages adopted by the court below has been settled by this court in *Parsons* v. *Strong*, 13 Vt. 235.

The opinion of the court was delivered by

HALL, J. Several objections are made to the verdict in this case.

It is urged in the first place, that the plaintiff was not entitled to recover, because the property was not demanded of the receiptors within thirty days from the time of rendering the judgment. Upon this point it is only necessary to say, that the liability of the receiptors, in this respect, depends upon the liability of the officer, to whom the receipt was given. If it turns out in this case, that the creditor's remedy on the sheriff, for the property attached, had become fixed by a timely demand on him, no objection is seen to the sufficiency of the demand on the receiptors.

It is next insisted, that the property was not taken in execution, or, in other words, was not demanded of the attaching officer, within the thirty days required by law. The statute provides, that property attached one *mesne* process shall be holden to respond the judgment thirty days from the time of rendering it; and that the day, on which the plaintiff shall first by law, without leave of court, be entitled to execution, shall be deemed the time of rendering such judgment, for the purpose of holding the property attached. It is also provided by statute, that no execution shall issue on any judgment of the county or supreme court, until twenty four hours after the rising of the court, unless by special permission of the court. Rev. Stat. c. 28, §§ 19, 20, 41. Without inquiring into the time when the twenty four hours is to commence running, it is sufficient, in this case, to say, that as the day succeeding the day of the rising of the court was Sunday, no execution could have issued on that day upon any mode of reckoning, and that consequently Monday, the eighth day of January, must be deemed to have been the day on which the plaintiff could first, by law, be entitled to his execution. The execution appears to have been issued on that day, and here arises the principal question on this part of the case. If the day on which the execution issued is reckoned as one of the thirty days, then the property was not charged in execution by a demand on the sheriff in time, and the lien of the creditor is gone. If, on the other hand, the day

Allen *v.* Carty et al.

of issuing the execution is excluded from the computation, the demand on the sheriff was in due time, and the lien is preserved.

The attention of the court has been called by counsel to numerous authorities on this point, both in England and this country ; and although they are not by any means uniform, yet their general current seems to tend to establish the rule, that where the computation of time is to be made from the happening of an event, or the doing of an act, the day of the event, or act, is to be included in the computation ; but if the time is to be reckoned from a certain *day*, or from a certain *date*, the day from which the time commences running is to be excluded from the computation. Under this rule we are disposed to exclude the day of the issuing of the execution from the computation, as we think the language of the statute is most naturally construed as fixing upon the *day* of the issuing of the execution as the time from which the computation is to be made. This is also in conformity to what is understood to be the law in reference to the computation of the sixty days, within which an execution may be served. The sixty days have been uniformly reckoned to be exclusive of the day of the date ; and a common sense view of the subject would seem to be, that the officer should have thirty of those sixty days, in which to charge in execution property attached. No error is therefore found in the ruling of the court in this respect.

It is next insisted, that Ferris was an incompetent witness to prove a demand of the property, on the execution, of the attaching officer, because of his interest in the event of this suit. It is said, if he had neglected to make the demand proved by him, he would be liable to the creditor for his default, and that by testifying to the demand he discharged himself from such liability.

It seems to be conceded, that when the effect of the testimony of a witness would be to discharge him from a direct and immediate liability to one of the parties to the suit, he is incompetent ; but in regard to what facts should constitute such liability, there appears to be considerable discrepancy in the cases ; and perhaps some of the cases in this state have gone the full length of the English authorities, in excluding the witness. To show that the witness was incompetent in this case, *Yeuren* v. *Smalley*, 3 Vt. 251, and *Dennison* v. *Hibbard*, 5 Vt. 496, are relied upon. In both those cases the witnesses were excluded, because, if the facts to which they

were brought to testify were true, they would be discharged from a liability to the plaintiffs, which liability, if their testimony was false, appeared to be fixed and immediate.

It must be conceded, that these cases bear a strong analogy, in principle, to that now before the court; but in one respect, at least, they differ from it. In those cases the liability of the witness was direct to the party in the suit; in this, the liability, if it exist, is to the sheriff, who is liable to the party. *Hutchinson* v. *Parkhurst*, 1 Aik. 258. *Ordway* v. *Bacon*, 14 Vt. 378. In the case of *Clark* v. *Lucas*, 1 C. & P. 156, which was an action against a sheriff for negligently executing a writ, it was held, that an assistant, employed by the sheriff's officer to execute the writ, was a competent witness for the sheriff, and that the liability of the witness to the sheriff's officer was too remote an interest to exclude him. And the rule seems to be, that the liability, in order to exclude a witness, must be direct and immediate to the party, and that, where the witness is only liable to a third person, who is liable to the party, such circuity of interest is no legal ground of exclusion. *Clark* v. *Lucas*, 1 C. & P. 156. *Briggs* v. *Crick*, 5 Esp. 99. 1 Greenl. Ev. 463, 468. In this case, the witness not being liable directly to the party, but at most to the sheriff, his interest is deemed too remote to exclude him. Whether the sheriff himself would have been incompetent, it is unnecessary to decide.

It is farther insisted in behalf of the defendants, that the rule of damages adopted by the court was incorrect. A portion of the property attached having been withdrawn from the custody of the receiptors by the act of the plaintiff in the attachments, or rather by the act of his creditors, it was very properly considered, that the receiptors were not responsible for the delivery of the property so withdrawn. The defendants then offered evidence to show the *actual value* of the residue of the property, which remained with the receiptors, and claimed that such value should be the rule of damages, without any reference to the value of the whole property, as fixed in the receipt.

It was held, in the case of *Parsons* v. *Strong*, 13 Vt. 235, that the value of the whole property, as stated in the receipt, should bind the officer, as well as the receiptor, so that neither could prove the value by other evidence; and this decision seems to be in con-

formity to the common understanding of such contracts, as well as to the object for which they are made. It is well understood, that these receipts are usually taken and given as security to the officer and creditors, and that no such valuation is often made, as takes place between purchaser and seller. The valuation is, perhaps, generally made with more reference to the amount of the debt, which is to be secured, than to the real value of the property. Hence the property may be greatly over or greatly under rated in the receipt, all parties understanding at the time, that the object of specifying the value is not an appraisal of the property, but to furnish a security for the debt. The contract being thus made and understood, the rule of damages claimed by the defendants would seem to be one, that, in practice, would be quite as likely to thwart, as to carry into effect, the original intent of the parties. The receiptor, in conformity to the character of the liability which the officer has been adjudged to be under, *(Bridges* v. *Perry,* 14 Vt. 262,) would probably be holden to no more than ordinary care and dilligence, in the preservation of the property; and in case of the attachment of numerous articles of property, it seems highly probable, that the receiptor, in almost all cases, would be able to show a valid excuse for not delivering some small portion of the articles. To hold, in such case, that the value specified in the receipt should be set aside, and the actual value of the residue substituted as the rule of damages, would be a manifest violation of the original intention of the parties, and would, in numerous instances, render the decision in *Parsons* v. *Strong* ineffectual and nugatory.

Nor does the rule adopted by the county court in this case seem to be free from objections. Although the property attached might, by the consent of the receiptors, have been valued in the receipt at more than it was worth, yet they may well have calculated upon the actual value, as furnishing them with security to that extent for the liability they incurred by the receipt. By the rule adopted, of deducting only the actual value of the property withdrawn from their possession from the valuation in the receipt, it is manifest that their real security for their remaining liability might be greatly impaired,—the extent of the injury to them depending upon the proportion of the whole property, which was thus withdrawn. If we apply the rule of damages, adopted in this case, to a case of the

Allen *v.* Carty et al.

*under valuation* of the property in the receipt, it might operate very unjustly to the officer.   By way of illustration, let it be supposed, that an attachment is made of the stock on a farm and of hay and grain in the barn, and a receipt taken specifying the whole value to be $500, which we may suppose is the amount of the debt sought to be secured.   If the barn and its contents be destroyed by fire, it is manifest that the receiptors might discharge themselves from their whole liability, by showing that this property, thus destroyed by the act of God, was of the value of $500, while the stock on the farm, still remaining in the hands of the receiptors, might be of equal value with the sum specified in the receipt, and abundantly sufficient to secure the debt, for which it was attached.   On the whole, as the rule adopted by the county court would be likely to operate unjustly in many if not in most cases, we think it an unsafe one to be generally applied.

In order to carry into effect the original intent of the parties, as far as practicable, we think the value of the property specified in the receipt, and not the actual value, should form the basis of the rule of damages, in cases circumstanced like this, as well as where the receiptor is liable for the whole property.   The jury should have been instructed, that, assuming the value of the whole property receipted to be the sum specified in the receipt, they should ascertain the just proportion, at that assumed value, which the property retained by the receiptors would bear to the property for which they were not liable, and that their verdict should be for such assumed value of the property remaining with the receiptors.   In other words, the rule of damages should be, not the actual value of the property for which they remain liable, but the value which the parties had put upon it by their receipt,—such latter value being ascertained on the assumption that the increased or diminished value of the property specified in the receipt had been rateably apportioned by the parties upon the several articles receipted.   This rule, which seeks to charge the receiptors with the portion of the property, for which they remain liable, at the value fixed upon it by their receipt, seems to us the most just that can be adopted.

This rule of damages has not been considered with reference to any other class of contracts than officers' receipts, which are deemed to stand on a peculiar footing of their own.

The judgment of the court below is set aside and a new trial granted.